UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EZRA J. SCOTT,

        Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

        Defendant.

Case No. C17-1018 MJP

**ORDER REVERSING AND REMANDING FOR PAYMENT OF BENEFITS**

THIS MATTER comes before the Court on Plaintiff Ezra J. Scott's request for review of the Social Security Commissioner's denial of his application for benefits. Having reviewed the Opening Brief (Dkt. No. 7), the Response (Dkt. No. 11), the Reply (Dkt. No. 12) and the Administrative Record, the Court REVERSES the Commissioner's final decision and REMANDS for an award of benefits under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff seeks review of the Commissioner's denial of his application for Social Security Disability Insurance Benefits. Plaintiff claims disability based on "debilitating pain and fatigue, cognitive problems, sleep disturbance, and gastrointestinal symptoms" he claims severely limit his day-to-day functioning. (Dkt. No. 7 at 2.) In particular, Plaintiff claims he "has diffuse body pain and recurring headaches that can last all day"; "has trouble falling asleep and staying asleep,

ORDER REVERSING AND REMANDING
FOR PAYMENT OF BENEFITS - 1

and sometimes goes days without sleeping"; "does not wake feeling rested" and "feels tired all the time"; "has difficulty concentrating, cannot think clearly, and experiences memory loss"; and suffers from "alternating constipation and explosive diarrhea, bloating, gassiness and severe stomach pain." (Id. at 2-3.) Plaintiff is currently 41 years old, and has worked as a sales representative, job analyst, and retail sales clerk. AR 617-18.

Plaintiff applied for benefits in July 2011, and alleges disability as of January 1, 2008. AR 599. Plaintiff's application was denied initially and on reconsideration. AR 74, 78. Following a hearing in December 2012, the ALJ issued a decision finding Plaintiff not disabled. AR 10-20. The Appeals Council denied Plaintiff's request for review, and Plaintiff sought review in the District Court for the Western District of Washington. AR 1, 756. The Court reversed and remanded for further administrative proceedings, which were held in March 2016. AR 753, 653. Following a supplemental hearing in July 2016, the ALJ issued a second decision denying benefits in March 2017. AR 627, 599-619.

## The ALJ's Decision

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step One:** Plaintiff did not engage in substantial gainful activity from the alleged onset date of January 1, 2008, through his date last insured of December 31, 2010.

**Step Two:** Plaintiff has the following severe impairment: fibromyalgia.

**Step Three:** Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Through the date last insured, Plaintiff had the residual functional capacity to perform light work without concentrated exposure to hazards, only

---

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER REVERSING AND REMANDING
FOR PAYMENT OF BENEFITS - 2

occasionally balancing, stooping, kneeling, or crouching and never climbing or crawling. He can work in a very quiet to moderate noise level.

**Step Four:** Through the date last insured, Plaintiff could perform past relevant work as a sales representative, job analyst, and retail sales clerk.

**Step Five:** Plaintiff was not under a disability at any time from January 1, 2008, the alleged onset date, through December 31, 2010, the date last insured.

AR 602-619. Plaintiff did not request review with the Appeals Council and the Appeals Council did not elect to review his case on its own, making the ALJ's decision the final decision of the Commissioner.[3] (Dkt. No. 7 at 2.)

## DISCUSSION

Plaintiff argues that, on remand, the ALJ erred by (1) rejecting the medical opinion evidence from Erik Suh, M.D., and John L. Baldwin, M.D., (2) rejecting Plaintiff's testimony, and (3) rejecting the lay witness evidence. (Dkt. No. 7 at 1.) He asks the Court to reverse and remand with instructions that he be found disabled as of the alleged onset date. The Commissioner responds that the ALJ did not err in denying benefits, because he provided legally sufficient reasons supported by substantial evidence.

### I. Medical Opinion Evidence

Plaintiff argues that the ALJ erred in rejecting the opinions of treating physicians Erik Suh, M.D., and John Baldwin, M.D. (Dkt. No. 7 at 9-13.) The only medical opinion to which the ALJ accorded weight was the opinion of nonexamining medical expert Haddon Christopher Alexander III, M.D., who testified at the March 2016 hearing.[4] AR 615.

---

[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.
[4] Dr. Alexander testified that his understanding was that the Commissioner "restricts" him from taking into account any subjective pain and therefore he "could never testify that someone was disabled based on fibromyalgia." AR 681. This is inconsistent with the Commissioner's ruling that fibromyalgia "can be the basis for a finding of disability." SSR 12-2p, 2012 WL 3104869 at *2. In any case, Plaintiff does not challenge the ALJ's evaluation of Dr. Alexander's opinion.

ORDER REVERSING AND REMANDING
FOR PAYMENT OF BENEFITS - 3

Social Security regulations distinguish among treating, examining, and nonexamining physicians. 20 C.F.R. § 404.1527. "While the opinion of a treating physician is … entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ may only reject an uncontradicted opinion of a treating or examining doctor by stating "'clear and convincing reasons that are supported by substantial evidence.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)). Even if "'a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" Id.

### a. Erik Suh, M.D.

In 2012, Dr. Suh reported that he had been treating Plaintiff for fibromyalgia and irritable bowel disease since 2009, and opined that Plaintiff was unable to work because "he cannot carry out any conversation for any length of time"; "frequently gets short term memory loss"; and is "not able to focus or concentrate…." AR 480. In addition, he "is not able to stand or carry any objects for more than an hour." Id. In 2016, Dr. Suh reported ongoing treatment for fibromyalgia and irritable bowel syndrome, and opined that Plaintiff's "symptoms continue to limit his ability to work…." AR 1076.

The ALJ rejected Dr. Suh's opinions on the grounds that they were not consistent with his own clinical notes or the record as a whole and, therefore, must have been based on Plaintiff's discredited subjective reports. AR 616-17. Conflict between a doctor's opinion and her own findings can be a "specific and legitimate" reason to reject her opinion. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Consistency with the record as a whole is a factor

relevant to evaluating a medical opinion. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). And an ALJ is permitted to reject a medical opinion if it is based to a large extent on a claimant's properly-discredited self-reports rather than clinical observations. Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014).

The ALJ contrasted Dr. Suh's opinion that Plaintiff cannot stand or carry anything for more than an hour with his own and other examiners' consistently normal clinical findings. AR 616. This was error. As the Ninth Circuit recently reiterated, "[f]ibromyalgia is diagnosed entirely on the basis of patients' reports of pain and other symptoms, and there are no laboratory tests to confirm the diagnosis." Revels v. Berryhill, 874 F.3d 648, 663 (9th Cir. 2017) (internal quotation marks omitted). Normal clinical results are to be expected and, thus, do not undermine Dr. Suh's opinion.

The ALJ also faulted Dr. Suh because he "did not conduct testing to support … a diagnosis of depression or memory loss…." AR 616. Here, however, depression and memory loss are related to the fibromyalgia itself. The Commissioner has outlined two methods to identify fibromyalgia, one requiring specified tender spots and the other requiring "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome…." SSR 12-2p, Evaluation of Fibromyalgia, 2012 WL 3104869 at *3 (July 25, 2012) (emphasis added) (footnotes omitted).[5] Dr. Suh documented repeated manifestations of these conditions. See, e.g., fatigue at AR 342, 340, 326; concentration/memory problems at AR 342, 340, 319; sleep

---

[5] Both methods also require a history of widespread pain lasting at least three months, and "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p at *3.

ORDER REVERSING AND REMANDING
FOR PAYMENT OF BENEFITS - 5

problems at AR 329, 326, 318; depression at AR 341, 337, 332; gastrointestinal problems at AR 336, 329, 326. Other doctors did as well. <u>See</u>, <u>e.g.</u>, AR 279 (anxiety), 350 (depression, focus and gastrointestinal problems) 365 (stomach pain), 364 (fatigue), 367 (sleep problems), 374 (anxiety), 381 (irritable bowel syndrome), 410 (problems with fatigue, cognition, irritable bowel, sleep), 491 (nonrestorative sleep). Plaintiff is not attempting to establish disability based on a diagnosis of depression or memory loss, and thus Dr. Suh's failure conduct testing to support such diagnoses does not undermine his opinions that Plaintiff is disabled by fibromyalgia.

The Court concludes the ALJ erred in rejecting Dr. Suh's opinions based on a lack of objective evidence or inconsistency with the record.

The Commissioner argues that Dr. Suh's opinion that Plaintiff cannot carry on a conversation is contradicted by Plaintiff's ability to testify at his hearings. (Dkt. 11 at 5.) The ALJ did not provide that as a reason, and in fact stated at two of the hearings that he would not consider what Plaintiff did at the hearing.[6] AR 661-62, 647. The Commissioner's contention is thus an improper post hoc argument on which the Court cannot rely. <u>See</u> <u>Bray v. Comm'r of SSA</u>, 554 F.3d 1219, 1225 (9th Cir. 1995).

Reliance on Plaintiff's subjective reports was also not a valid reason to discount Dr. Suh's opinions because, as discussed below, the ALJ erred in finding Plaintiff not credible.

The Court concludes the ALJ erred by rejecting Dr. Suh's opinions.

### b. John Baldwin, M.D.

Based on examinations in 2008 and 2012, Dr. Baldwin diagnosed Plaintiff with "[l]ongstanding fibromyalgia" and related irritable bowel, opining that both were disabling. AR

---

[6] One hearing transcript does reveal that the ALJ noted at one point that Plaintiff appeared to not be paying attention. AR 657.

411.  The ALJ gave the opinions "minimal weight" on the grounds that they lacked supporting findings and were instead based on Plaintiff's self-report, and did not expressly apply before Plaintiff's date last insured of December 2010.  AR 617.

After examining Plaintiff in 2008 and noting he had "trigger point tenderness," Dr. Baldwin diagnosed him with fibromyalgia.  AR 491.  In 2012, Dr. Baldwin again examined Plaintiff, noting "[f]ibromyalgia trigger points are all tender."  AR 411.  In his 2012 opinion, Dr. Baldwin expressly noted that in both 2008 and 2012 Plaintiff had a "very similar range of complaints including irritable bowel syndrome[,] generalized pain, fatigue, and poor sleep."  AR 410.  Because Dr. Baldwin expressly stated that Plaintiff's condition had remained "very similar" from 2008 to 2012, the ALJ's finding that Dr. Baldwin's opinion did not apply to the relevant period is unsupported by the record.

As discussed above with regard to Dr. Suh's opinions, the lack of objective findings was not a legitimate reason to discount a medical opinion based on a fibromyalgia diagnosis.  Reliance on Plaintiff's subjective reports was also not a valid reason to discount Dr. Baldwin's opinions because, as discussed below, the ALJ erred in finding Plaintiff not credible.

The Court concludes the ALJ erred by discounting Dr. Baldwin's opinions.

## II. Plaintiff's Testimony

Plaintiff alleges that he spends most of his time managing his symptoms.  AR 177, 39.  He is in constant pain, which is partially diminished by medication.  AR 896.  However, he takes pain medication as little as possible because it has side effects and exacerbates his other symptoms.  AR 896-97.  Pain disrupts his sleep, leading to mental exhaustion and an irregular schedule.  AR 46-48.  Various simple activities, such as being in a car, can trigger a "violent explosion" from his gut.  AR 48.  Taking enough medication to allow him to manage a basic

activity, such as attending a doctor's appointment or spending time with friends, leads to several days of recovery. AR 49, 896-97. He has frequent mental fogginess and only short periods of mental clarity. AR 172, 897.

Where, as here, an ALJ finds a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to cause the symptoms alleged, and the ALJ finds no affirmative evidence of malingering, the ALJ may only reject the claimant's testimony as to the severity of his symptoms only by offering "specific, clear and convincing reasons." Trevizo, 871 F.3d at 678.

The ALJ discounted Plaintiff's testimony because of "incongruity between the claimant's alleged symptoms and objective presentation and the nature and scope of treatment for his symptoms…." AR 606. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). And an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" can be a valid reason to discount a claimant's testimony. Tommasetti, 533 F.3d at 1039. These principles must, of course, be applied with an awareness of the impairment at issue. See Revels, 874 F.3d at 666 (error where "ALJ did not consider Revels' testimony in light of her fibromyalgia diagnosis"). In evaluating a claimant's testimony regarding his fibromyalgia, the Commissioner directs the ALJ to "consider all of the evidence in the case record, including the person's daily activities,[7] medications or other treatments the person uses, or has used, to alleviate symptoms;

---

[7] The ALJ did not mention Plaintiff's daily activities, which the record suggests are extremely minimal. See, e.g., AR 177 (daily activities are eating, sleeping, and managing symptoms).

the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." SSR 12-2p at *5.

To find fibromyalgia a severe medically determinable impairment, the Commissioner requires "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p at *3. To use that required evidence to undermine claims of fibromyalgia is illogical. Here, the ALJ listed normal findings by James Song, M.D., as reasons to discount Plaintiff's testimony. However, Plaintiff expressly saw Dr. Song in order to "rule out any neurological problems" that could cause the symptoms, instead of fibromyalgia. AR 280. The normal results are exactly the type of evidence the Commissioner requires in order to accept the fibromyalgia diagnosis. SSR 12-2p at *3.

The ALJ also cited normal findings by Scott Tyler, M.D., and implied that Dr. Tyler considered Plaintiff's problems to have "psychological causes." AR 607. However, Dr. Tyler clearly acknowledged the diagnosis of fibromyalgia and prescribed Lyrica to treat it. See, e.g., AR 354, 357, 358. And Dr. Tyler's normal motor findings are to be expected with fibromyalgia. See Revels, 874 F.3d at 666 (normal range of motion and muscle strength, tone, and stability were erroneous reasons to reject claimant's testimony).

The ALJ found plaintiff's symptom journals inconsistent with what he reported to Dr. Suh. AR 607-08. The purpose of the symptom journal, in which food, medications, and symptoms were recorded, was to look for patterns and correlations. See AR 477 ("He kept a m[e]ticulous jo[u]rnal but could not find any correlations."). The fact that Dr. Suh's notes do not show every symptom that is listed in the journal does not, in itself, contradict Plaintiff's symptom testimony. Thus the ALJ's observation that "the extent of [Plaintiff's] complaints in

his symptom journal far exceeded complaints recorded in the clinical notes" is entirely consistent with the purpose of the symptom journal.[8] AR 611.

For example, on February 26, 2009, Plaintiff had his first appointment with Dr. Suh, who reported that he presented with "multiple issues" including "chronic fatigue, myalgia, difficulty with concentration, joint pains, and others." AR 342. In his symptom journal the same day, Plaintiff described low energy, pain in multiple areas, stomach muscle spasms, and "hazy" mental abilities, all of which are consistent with Dr. Suh's notes. AR 916-17. The day before, Plaintiff's wife wrote in his symptom journal that Plaintiff was "slow to respond to questions or engage in conversations today [and] answers in pieces sometimes (pausing to find words)."[9] AR 914. Difficulty with concentration is consistent with pausing to find words. Dr. Suh's notation of "Alert, no acute distress" indicates Plaintiff was fully awake and not in an emergency situation, and does not contradict Plaintiff's symptom reports. AR 342.

However, also on February 26, 2009, Plaintiff wrote in his symptom journal that he "had to focus to keep stomach under control" and rated his abdominal pain as seven to nine out of ten. AR 917. Yet Dr. Suh's examination showed his abdomen was "non-tender" with "no guarding." AR 343. With that level of pain, tenderness would be expected.

The ALJ also found the lack of referrals by Dr. Suh to reflect poorly on Plaintiff's testimony. AR 609. Yet Dr. Suh referred Plaintiff for GI issues as well as to an ENT for chronic sinusitis, as well as conducting extensive testing himself and giving Plaintiff trial runs of several medications. AR 474 (GI referral), 330 (ENT referral); see e.g., AR 334 (trial of Savella), 337

---

[8] Moreover, in some instances the ALJ's recitation is not accurate. The ALJ cited 23 pages where Plaintiff mentioned diarrhea but only one of these pages actually does. AR 611.
[9] Calling this "non-communicative," as the ALJ does, is somewhat of an exaggeration. AR 608.

ORDER REVERSING AND REMANDING
FOR PAYMENT OF BENEFITS - 10

(trial of antipsychotic), 341 (heavy metal screen and lyme titer tests), 327 (angioedema and vitamin D tests), 320 (multiple blood tests). The ALJ's finding is unsupported by the record.

The ALJ noted that abdominal examination results were consistently normal. AR 612. But that is entirely consistent with irritable bowel syndrome. V. Mohan, M.D., performed an endoscopy and colonoscopy "to rule out other problems" and thus validate that Plaintiff's abdominal symptoms were related to irritable bowel syndrome. AR 267.

The ALJ discounted Plaintiff's testimony on the grounds that his treatment was conservative. AR 612. But where the claimant provides a reason for not seeking or complying with treatment, the ALJ cannot discount the claimant's testimony without addressing why the reason given is insufficient. See Trevizo, 871 F.3d at 680. Plaintiff testified that he "tend[ed] to have bad reactions with a lot of prescription drugs," and many sleep medications "did not work." AR 44, 46; see also AR 896-97. His treatment records are consistent. AR 410 (cyclobenzaprine and Savella discontinued because of side effects), 342 (several antidepressants unhelpful), 334 (Zyprexa discontinued because ineffective). Moreover, the record does not establish that Plaintiff's treatment was conservative. Plaintiff consistently took Lyrica for his fibromyalgia. See, e.g., AR 341. He tried numerous other medications, with little helpful effect, and settled on a combination of over-the-counter medications for symptom relief and prescription painkillers when necessary. See AR 467, 1037. The ALJ also cited the medical expert's testimony that he would expect to see treatment with Bentyl, Lotronex, or Metamucil for frequent diarrhea. AR 612. But the expert's testimony was based on the premise that "the Claimant was experiencing the diarrhea, to the extent that he is alleging or to the extent counsel has suggested…." AR 695. It is unclear how frequently Plaintiff alleged he had diarrhea, but his counsel gave the medical

expert a hypothetical of "10 or 12 times a day." AR 689. Nowhere in the record does Plaintiff allege that he has diarrhea ten times a day. Thus the medical expert's testimony is not helpful.

All of the reasons the ALJ gave for discounting Plaintiff's symptom testimony were erroneous except for the finding that he reported high abdominal pain on the same day his doctor found no abdominal tenderness or guarding. Whether this is necessarily contradictory is subject to some interpretation; tenderness is pain upon palpation, and his already high level of pain may not have increased with palpation. Regardless, the Court concludes that this one potential discrepancy in several hundred pages of medical records is not, by itself, a clear and convincing reason to reject Plaintiff's testimony. See Trevizo, 871 F.3d at 678; compare Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1163 (9th Cir. 2008) (erroneous reasons to reject plaintiff's testimony were harmless because there were multiple remaining valid reasons that were not "relatively minor").

### III. Lay Witness Evidence

Lay witness statements were provided by three of Plaintiff's friends, his mother, father, and brother. AR 226-37. Plaintiff's wife testified at the December 2012 hearing.[10] AR 51-58. All seven of these witnesses described weakness or obvious signs of pain such as moans, groans, and grimaces. AR 228, 229, 231, 232, 234, 236, 56. They also consistently described mental fogginess or difficulty with concentration or memory. AR 227, 229, 230, 232, 234, 236, 57-58. Nearly all of them described evidence of gastrointestinal distress, in particular abdominal sounds or spending significant amounts of time in the bathroom. AR 226, 230, 232, 234, 236, 57. And

---

[10] Plaintiff's wife also provided a statement in 2016, but Plaintiff does not appear to challenge the ALJ's rejection of it as "well past the relevant period." AR 615 (citing AR 903-04).

most described simple tasks he can no longer do such as cleaning or cooking or, at times, driving or walking. AR 226, 229, 230-31, 232, 234, 55-57.

The ALJ assigned all lay witness statements "little weight" for the same reasons he discounted Plaintiff's testimony, "i.e., the lack of clinical findings, his treatment history, his performance on physical examinations, and the nature of his allegations versus what he reported to clinicians…." AR 615. Because the ALJ's reasons to discount Plaintiff's testimony were erroneous, they also do not suffice to reject the lay witness statements.

## IV. Scope of Remand

Plaintiff requests the Court remand for an award of benefits. (Dkt. 7 at 16-17.) In general, the Court has "discretion to remand for further proceedings or to award benefits." Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. Garrison, 759 F.3d at 1020. The Court has flexibility, however, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021.

Here, all three criteria are met. First, the record is fully developed. The ALJ has held three hearings in this matter, and the Court has now reviewed the case twice. The relevant period for analysis ended with Plaintiff's date last insured of December 31, 2010, nearly eight years ago. Medical opinions from Plaintiff's longtime treating physician are in the record, as

well as multiple lay witness statements and Plaintiff's own testimony.  Second, as discussed above, the ALJ has not provided legally sufficient reasons for rejecting this extensive evidence. "If grounds for concluding that a claimant is not disabled exist, it is both reasonable and desirable to require the ALJ to articulate them in the original decision." Garrison, 759 F.3d at 1020 (internal alterations omitted).  Third, if the improperly discredited evidence, the opinions from Dr. Suh and Dr. Baldwin and statements from Plaintiff and lay witnesses, were credited as true, the ALJ would be required to find Plaintiff disabled on remand.  Dr. Suh's opined mental and physical limitations alone establish an inability to complete a normal workday and workweek.  AR 480.  Dr. Baldwin concurred that Plaintiff is disabled.  AR 411.  In addition, Plaintiff's statements and the lay witness statements consistently describe mental and physical impairments that would prevent completion of a normal workday and workweek on a consistent basis.

The only remaining issue is whether the record as a whole leaves serious doubt as to whether Plaintiff is disabled and thus the Court should exercise its flexibility to remand for further proceedings.  "Where … an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014).  Here, however, the extensive evidence in the record paints a consistent picture of Plaintiff as a person with high levels of physical pain and mental deficits that make ordinary tasks difficult.  Accordingly, remand for an award of benefits is appropriate in this case.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for an award of benefits under sentence four of 42 U.S.C. § 405(g).

The clerk is ordered to provide copies of this order to all counsel.

Dated this 5th day of September, 2018.

*Marsha J. Pechman*
Marsha J. Pechman
United States District Judge